May it please the court, Mr. DeGrosso. Good morning. I'd like to begin the argument discussing Title 18 United States Code, Section 841. That is the third argument on the brief, but it is one that I think might take me a little more time, so that's why I'm starting with that one. First, the Controlled Substance Penalties Act of 1984 is what created that particular statute, and it was created for a purpose, that punishment was going to be dependent on drug quantity. The Anti-Drug Abuse Act of 1986 created escalatory, mandatory minimums, basically according to weight. The theory was that major traffickers of controlled substances, that the more that they had trafficked, the more serious their punishment should be, and the law continued on just in that fashion. In fact, 841 is divided the easiest way to do it for purposes of this. Let's get to the argument. It's an Equal Protection Clause argument, as I understand it? It is, Your Honor. Does B1C cover the same universe of drugs as B1A and B? It does, but it covers a much smaller universe. Then how can there be an equal protection, even an issue? Well, it creates a disparity in sentencing because, for example... But it's a different universe of violators. It is. Sure, there's a difference in penalty between first degree murder and second degree murder. That's not an equal protection clause violation. I agree, but second degree murder carries a much lower punishment than first degree murder, and that's really the argument that we're making, is the change that was done by the First Step Act. All right. Well, let me come at it a different way. Give me a case that says that rational basis review is appropriate for equal protection clause issues. I believe Johnson v. The United States was a case that dealt with the residual clause, and that, I think, went through this circuit and then up to the Supreme Court, and that was one where the residual clause was found to be unconstitutional. But that wasn't an equal protection clause issue. The equal protection clause requires discrimination and an intent to discriminate. Rational basis has nothing to do with it, in my experience. So I just, I don't understand where your argument comes from on either of those two bases. Well, and I think there's also an Eighth Amendment argument that fits into it as well. Is that in the brief? I believe it is, that deals with the way that the punishment is meted out, that it creates, as the court is aware, we have to look at all of the factors under 3553A, and this, the way it's set out now, creates a disparity in sentencing and could at least jeopardize respect for the law. And the best way to illustrate that is if a particular person has a very tiny amount of personal use quantity of a serious drug, like cocaine, and gives some to a friend who passes away, that person, if they have any prior drug possession charge, has a mandatory sentence of life. Whereas if that same person had ten times the quantity of heroin on them, so they were charged under B1B or B1A. Well, what tells us that's not what Congress intended? It doesn't fit what the purpose of the First Step Act that made that change stated it was supposed to do. The First Step Act was to make sure that we were not just giving mandatory minimums to everybody on a drug offense, but to target the specific, more serious. So your view of purpose trumps plain meaning? I think it does. That's what you just said. It does when the plain meaning doesn't seem to make sense with the way it was before. And the way I would. You don't have any cases for that. It's a difficult argument. I acknowledge that. But I think if we look at the history of cases, one of the ones that, I guess the best way to address the rational basis, because that was an issue that the government brought up in its brief. And it said basically, if there's any rational basis for why this law could exist the way it does, then it's fine. The best argument the government could come up with was maybe Congress, although they didn't say it, and it's contrary to their intent and their stated purpose of the First Step Act, maybe Congress all of a sudden decided now, let's punish the street level users and the possessors at the street level far more seriously than we punish the traffickers and the people that are moving large quantities. There is literally no rational basis for this law to exist the way that it does. I get that the plain meaning of it is clear, but the change that happened with respect to it is, does it, there can't be, it appears more as a mistake than a rational basis. They don't cover, the statutory provisions you want us to compare don't cover the same offenses. And therefore, they are not discriminatory vis-a-vis each other. They are Congress's review of the penalty that's appropriate for that universe of offenses. And you are superimposing on that your idea of, and other people's idea, of what's fair in sentencing. And we've been dealing with that since the Sentencing Reform Act of 1984, people coming in and saying, well, Congress can't have meant that, it's silly, or it's irrational, or it's enforcing and applying the law. I recognize that, but at the same time, if the law itself doesn't seem to fit, it doesn't seem like Congress considered that the change that it was making would have this effect. It almost seems as if it was an accident, they didn't. Lots of laws don't seem to fit. It seems to. When lawyers and other intelligent people read it after the fact, they can't have meant that. And I agree. What the court is mentioning is that these are different acts that people would be committing. 841 in and of itself deals with the distribution, the trafficking of drugs. But this particular provision deals with causing the death of someone to whom that drug is trafficked to. 841A and 841B also deal with somebody who traffics drugs where death results. All three of them did. And before the First Step Act, if someone had any kind of... But isn't that the overriding purpose of the mandatory sentence? It is, except it's been changed with respect to only two parts of 841, just 841A and 841B. And by doing that, the people who have committed the far more extreme, serious offenses are getting punished less if a death occurs. So it was unconstitutional not to make the Fair Sentencing Act retroactive because that was unfairly discriminatory of older violators. That's the same argument, isn't it? I think... And the Supreme Court said it's not retroactive. Right. And retroactivity would be dealing with what someone knew at the time they committed a defense and what the law was. I'm just using... I'm taking another fairness example. We don't decide sentencing issues based on what we think is fair if Congress has told us what the law is. I agree. But the courts do when laws don't make sense. They don't. Give me a... Like the modified categorical approach when we deal with the armed career offender. And that was another argument that the government brought up because it said this court had not dealt with this issue head on exactly at the time we were briefing it. So they referred this court to the Sixth Circuit. And there, there was someone complaining that state court predicate offenses shouldn't be used for enhancements on federal cases because each state has wildly different laws and what might be burglary in one state or felony drug possession in one state might be a misdemeanor in another. And in fact, courts dealt with that issue by creating the modified categorical approach where we basically said Congress does want us to look at what these other state offenses are. So that burglary, if it's not considered the generic burglary, would not count under armed career offender. To what extent, if any, does the identity or the lethalness of the drug make any difference? With respect to... Well, this case in any way, we've all read about the nature, in fact, I have a copy. I don't know whether it's from Washington Post or New York, but a long article about the nature of this drug. And of course, we're not supposed to take that into account, but is it an overriding consideration at all? I think that it is to the extent that the purpose of the way 841 was initially designed dealt with not just the same quantity for each type of drug, but a specific quantity for each type of drug. So that having more fentanyl or heroin would be far more serious than having the same amount of cocaine. I don't know that that necessarily deals with the lethality of those particular drugs. Gee, that sounds unfair just in the same way you're arguing this case. I understand the court's perspective on it, but I think that this has been something that's been addressed on other cases where Congress created a situation that, at least in the way that it operates, does not seem like that could have possibly been what they intended and that is literally contrary to their stated purpose of what they were trying to accomplish. All those cases you're talking about are decisions interpreting ambiguities in statutes. Your argument is the statute's wrong, it's unconstitutional, don't apply it. That's very different. Well, I think some of those cases also initially talk about the vagueness of a statute and go down that road of if it's vague, then we don't know what was meant, but eventually get to the fact that vagueness itself can be applied to statutory quantities, limits on particular issues. What's the vagueness here? That it doesn't, I mean, we're back to that it doesn't make sense, but the vagueness... That's not a vagueness argument. Vagueness is a very narrow, largely disfavored concept that's rarely applied. I understand, I think that my time is up at this point, I can use the rest of my time if that's okay. Thank you, Mr. Goldfarb. Thank you. Mr. DeGrossa. May it please the Court, Mr. Goldfarb, I'm Paul DeGrossa representing the United States, Neapolitan in this case. Your Honors... And has the United States Supreme Court ever applied rational basis review to an equal protection clause issue? Not that I'm aware of, Your Honor. I don't think so either. No, I think your point's well taken. So why are you leading with that? I wasn't going to lead with that. No, I know, but the brief does. Well... Brief and valid, hugs it. Well, Your Honor, I would say this, rational basis seemed to be the place to start on this because the appellant invites the equal protection... I don't understand your argument. I don't understand your rational basis argument. Well I think... If it's even valid at all, I didn't get it. Well, what's... The statute's constitutional, it was constitutional before Congress amended and it was constitutional afterwards and I think the Sixth Circuit spoke to that. B1A and B1B were amended, I think the Fair Sentencing First Step Act tried to amend the mandatory minimums and that's what Congress was addressing. And they left B1C alone because distribution of drugs that cause serious physical injury or death is a different matter. And that's the conviction in this case. It shouldn't be disturbed by this court or any other court in our opinion. The defendant... Well, the 404B seems like a pretty strong medicine here. Why... Why... Why... Why wasn't... Why wasn't this overkill in our cases to deal with that question? Thank you, Your Honor, for asking those questions about 404B. The evidence in this case was unique to this case in the sense of this defendant by his own admission, his own communications, delivered a special mixture, in his own words, of fentanyl and Adderall. And that brought into play particular relevance to his prior possession of those specific drugs. It wasn't at least one of the prior possessions pursuant to a prescription? No, Your Honor. I think the evidence in those cases was the defendant lacked prescriptions. Okay, when he was arrested, I guess, he had the Adderall he had was... That's correct. Prescription. And one of the arrests, and the appellant makes the point that Ritalin is not Adderall. First of all, it is an accelerant, but also he thought he had Adderall and he had 150 pills of the drug in an unlabeled prescription bottle. So this evidence that he possessed these drugs without prescriptions, that he used it as his special mix and gave it to the victim, which caused the victim's death, we believe the possession of those were relevant. I think the trial court agreed with us. We wanted to go further, Your Honor, because there was direct evidence that the defendant admitted that he was selling the pills or distributing these pills, whether they were prescription drugs or not. That included the Adderall and the Ritalin he had in his possession. The trial court weighed that and decided possession was only going to be admissible. No prior evidence of distribution would be allowed. Appellant argues in his brief that had that evidence been admitted of distribution, then it would have been relevant to the government's case. But he argued before the trial court that none of that 404B evidence was relevant and should have been admissible. Why wasn't it prohibited propensity evidence? Your Honor, first of all, it wasn't offered for that. The jury was well instructed, both before the testimony with regard to the 404B. They were instructed. The government never says we're offering this for propensity. Well, Your Honor, his knowledge and intent was placed at issue in this case. We had the burden of proof. And his knowledge and intent to deliver drugs, dangerous and deadly drugs, to the victim was relevant. He pled not guilty. That placed his mental state of mind at issue in this case. We had the burden, so we... That doesn't put much of a limiting principle on the application of 404B. It's literally as if you could... It's always an issue in an intent crime. So does that mean that prior bad acts are always admissible? No, Your Honor. They have to be relevant. They have to be relevant to an issue. If you go by the standards of the admissibility in this circuit of 404B evidence, the government followed that to the letter, Your Honor. It was proximate in time, a few years before the crime of conviction. It related to the defendant's knowledge and intent to possess dangerous drugs. The same drugs that he bragged about delivering to his boy Ryan that caused the victim's death. He brought that into play when he made those admissions. The scientific evidence in this case was that the victim had that Adderall in his system along with the fentanyl, that this was a deadly combination. So it's not always relevant, Your Honor, and while appellants want to argue it's always offered by the government for propensity, in this case it was especially relevant given the special mixture of drugs that killed the victim. The argument that it was propensity or that somehow it prejudiced the defendant and substantially prejudiced his case, the appellant argues that our case was weak. I would submit, Your Honors, that this case was overwhelmingly strong and even if you were to find error in the admission of the 404B evidence, and I don't believe you will, it's harmless error given the strength of the government's case and the overwhelming evidence of guilt. There was evidence that the defendant rented the room, that the defendant was with the victim that night, that the defendant communicated with one of his customers to tell the customer where he was going, that he was obtaining fentanyl, that he in fact obtained the fentanyl, he had the capsules in his possession, he had the capsules in his possession while they're finding the victim's body in the hotel room, the very capsules he purchased that night and delivered to the victim, the same capsules he delivered to his customer. He then sold the same fentanyl to his customer two occasions after the victim's death. He communicated over his telephone. He was getting together with the victim. He communicated over his telephone what he was getting for the victim and what he gave to the victim, which included his special mixture. And by his prior possession of these drugs, which was relevant to his knowledge and intent in this case, there was overwhelming evidence that he caused the victim's death. There was no contrary evidence offered by the defense to rebut the scientific evidence that it was the but-for cause of the victim's death. That 99 level of fentanyl, as this Court is aware, that is a dangerous, dangerous level. It killed this victim. It was levels the toxicologist and the medical examiner hadn't seen before in a case like  So, Your Honor, I respect the appellant's argument, but say that he misses the mark when he says we needed the 404B evidence to get guilt in this case and get a guilty verdict. The jury wasn't confused about the issues in this case. There was nobody else that could have delivered the drugs that killed the victim other than the defendant, and that's why the jury found him guilty of that. There was no confusion. Not RN? I'm sorry? Not RN? Not... Well, you said there was nobody else who could have delivered. Why not RN? Why not the cooperating individual who also obtained drugs that night? There's no evidence of that. But even if... They were together. Well, Your Honor, that argument was tried and failed. He got drugs and then he shared them with the victim. I mean, that's... Well, that was his argument. It's certainly conceivable. Well, does it matter? I'm sorry, Your Honor. Well, it's a jury... I mean, that's... It was a jury question. I don't think Your Honor is substituting your judgment for that of the jury. The appellant tried that argument at the trial court and tries it again in his brief. But it wasn't open and shut. I don't think any case is open and shut, Your Honor, until the jury renders its verdict, and then we can maybe say so. I'd say you're defending the verdict. I don't think the evidence was so insubstantial or contradictory in this case that the verdict ought to be disturbed at all on appeal. I think the evidence was overwhelming. There was no prejudice in the admission of the 404B evidence. There's no error in the sentence imposed by the trial court. I don't know if there's any other questions, but I would urge you to affirm the appellant's conviction. I see no questions. Thank you. Thank you. Am I able to know how much time I have left? You've got three minutes. Thank you. Oh, that works. May it please the court again, Mr. DeGrossa. The court's asking, or Mr. DeGrossa was discussing the fact that this case was, that the evidence was so clear that the jury would have found him guilty no matter what. Then it begs the question, why did they need to put in the 404B evidence? Not only that, but they didn't just do it by use of a prior certified conviction. They had three mini-trials in the middle of this case, bringing in law enforcement officers who had arrested Mr. Cardwell years before to testify to that situation. If the evidence was so overwhelming, then there just wouldn't have been a need to do that and run the risk that this court might say it was a bit much putting in all of that extrinsic evidence. There was evidence that with respect to, I'll just do initials where SN and RN, and I believe I mentioned those in the brief, that in fact the person who passed away was the only one that night who had money to buy drugs. SN was the third person who came to the hotel room. Yeah, I said the wrong one. But he came there and there was literally a text message the government put into evidence where my client was telling SN that RN had $500 for him. Then all of a sudden SN comes there, goes all the way to the room where there are no cameras and then leaves. I did want to, if I can, address, so overall, arguments one and two go hand in hand to an extent that there wasn't evidence to convict him. The evidence wasn't sufficient. So what was done were three mini-trials to show the jury his propensity for having drugs, for committing drug-like offenses with the hope that taken together, basically where there's smoke, there's fire, that would push them over the top. With respect to equal protection arguments, in United States v. Johnson, there was a quote that I thought would be relevant to this court that stated, when a poorly drafted statute imperils defendant's liberty and due process rights, the court will not hesitate to strike it down, even if it must go to great lengths to do so. What followed that was a statement from Justice Scalia saying, only experience could reveal a statute to be unconstitutionally impermissible to apply even-handedly. In other words, sometimes when they're drafted, we don't know that these statutes are wrong, but then as time goes by and we actually get to see it in action, it becomes apparent that the way it was drafted doesn't fit. It creates a disparity. It literally does not promote respect for the law. In so doing, now with hindsight being what it is, this court could take action. The request is that the specific enhancement just on B1c, because it's such a low standard, that that enhancement not be permitted. The conviction can still stand, but the punishment, it should be sent back and remanded with instructions that that particular enhancement can't possibly be constitutional. And therefore, he still would be convicted. He still would have a substantial sentence, as the government indicated. This existed before the First Step Act occurred, and it was constitutional then, and it exists now. There still would be. Has any other circuit court addressed this same issue? I think the closest I could find was the same that the government did. That was the Sixth Circuit that I could see. And the Sixth Circuit, in one of the cases the government mentioned, discussed we're not getting to the constitutionality of the issue. So it really is something that is just coming into practice now. If we consider it was passed in 2018, we all then went through COVID, a lot of cases didn't get to trial. We're literally, all the circuits now, I think, are just starting to see the impact of what Congress had done. Thank you, Mr. Goldfarb. Thank you so much. The court notes you've represented your client today under the Criminal Justice Act. We thank you for accepting the appointment, and I'm sure your client's appreciative of your representation. Thank you. Thank you very much. Thank you to both counsel for the arguments you provided to the court in supplementation to the briefing, and we'll take the case under advisement. Counsel may be excused. Thank you.